**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TIMOTHY WAYNE ARNETT, | ) | NO. CV 11-5896-JAK(E) |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND ORDER DISMISSING |
| UNKNOWN, | ) | COMPLAINT WITH LEAVE TO AMEND |
| Defendant. | ) | |

For the reasons discussed below, the Complaint is dismissed with leave to amend. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

**BACKGROUND**

On July 22, 2011, Timothy Wayne Arnett, a federal prisoner proceeding pro se, filed a document titled: "NOTICE AND REQUEST FOR UNITED STATES ATTORNEY TO INFORM GRAND JURY OF THE DEPRIVATION OF PETITIONER'S RIGHTS IN VIOLATION OF 18 U.S.C. § 242, HIS IDENTITY, AND SUCH U.S. ATTORNEY'S ACTION OR RECOMMENDATION PURSUANT TO 18 U.S.C. § 3332a; SUPPORTING DECLARATION, AND AFFIDAVIT TO PROCEED IN FORMA

1  PAUPERIS" ("Notice and Request").  Although the first two pages of the
2  document request that the court issue a "summons" directing the United
3  States Attorney to respond to the "Complaint" by informing the grand
4  jury that Mr. Arnett purportedly has been deprived of his civil
5  rights, page two of the Notice and Request contains the legend
6  "COMPLAINT[;] DECLARATION OF TIMOTHY WAYNE ARNETT IN SUPPORT OF
7  COMPLAINT" (see Notice and Request, p. 2).  The Court construes the
8  Notice and Request as a civil rights Complaint ("Complaint"), and
9  deems Mr. Arnett to be the Plaintiff on the Complaint.

11     Plaintiff alleges that "several Federal Bureau of Prisons senior
12  staff at FCI Terminal Island" deprived Plaintiff of his alleged First
13  Amendment rights to communicate with a family member and to file
14  grievances, threatened to transfer Plaintiff for submitting
15  grievances, and retaliated against Plaintiff for submitting a
16  grievance by assigning Plaintiff to a job in the prison laundry
17  (Complaint, p. 2).  Although Plaintiff identifies certain prison
18  officials by name in the body of the Complaint, Plaintiff does not
19  name any Defendants.  Plaintiff does not seek damages, but rather the
20  issuance of a summons ordering the United States Attorney to inform
21  the grand jury of Plaintiff's allegations (Complaint, p. 13).

23     Plaintiff alleges that, commencing in 2006, Plaintiff
24  participated in allegedly authorized stock market courses at the
25  United States Penitentiary at Victorville, California (id., p. 2).
26  During this time, a member of Plaintiff's family allegedly opened a
27  personal electronic trading account (id., pp. 2-3).  Plaintiff
28  allegedly offered advice to this family member using principles he had

1  learned in the stock market courses (id., p. 3).  Plaintiff allegedly
2  used the prison's inmate telephone and email system to communicate his
3  investment recommendations (id.).  In February 2008, Plaintiff
4  allegedly was transferred to the United States Penitentiary at Lompoc,
5  California, where he assertedly participated in an advanced stock
6  market class, persuaded the Supervisor of Education to invest in
7  certain stock, and continued to make recommendations (id.).

9      In June 2010, Plaintiff allegedly was transferred to FCI Terminal
10 Island, where he assertedly "noticed" that the institution did not
11 offer "CNBC on the prison's TV network" or courses such as "Forbes'
12 Investment Course" (id.).  Plaintiff allegedly submitted a proposal to
13 the Supervisor of Education, Arnel Abril, requesting authorization to
14 teach such a course and expressing a need for CNBC.  Abril allegedly
15 refused to approve such a course and threatened to transfer Plaintiff
16 if he continued "to press for such a class through administrative
17 remedies" (id., pp. 3-4).  Thereafter, a senior prison employee
18 allegedly told Plaintiff that staff members assertedly knew they could
19 threaten inmates who submitted complaints or administrative grievances
20 with transfer, loss of family visits or denial of the opportunity to
21 participate in the Residential Drug Abuse Program (id., p. 4).

23     Plaintiff allegedly submitted an informal resolution request
24 ("BP-8") asking that the prison add CNBC to its television network
25 (id.).  Abril allegedly did not respond (id., pp. 4-5).  Plaintiff
26 allegedly submitted a similar request to the warden, along with the
27 information that Abril assertedly had threatened Plaintiff, but
28 allegedly received no response (id., p. 5).  Plaintiff allegedly

3

discussed the matter with Assistant Warden Pete Spartz, who assertedly said he would add CNBC to the list of television channels (id.). Instead, however, Spartz reportedly added the Cartoon Network and the Animal Planet Channel (id.).

Thereafter, on April 25, 2011, Disciplinary Hearing Officer Joe DeVore allegedly warned Plaintiff that Plaintiff was violating a policy of the federal Bureau of Prisons ("BOP") prohibiting inmates from conducting a business by using the prison email system to contact a family member with investment advice (id.). Plaintiff alleges that DeVore's conclusion that Plaintiff was conducting a business in violation of BOP policy was erroneous and inconsistent in light of the prison's alleged tolerance of other inmates who were "doing what [Plaintiff] had been doing" (id., p. 6). Plaintiff alleges that inmates are permitted to provide laundry services for other inmates in exchange for "stamps or commissary," yet assertedly are never disciplined for operating a business (id., p. 7).

Allegedly believing DeVore was mistaken, Plaintiff assertedly submitted a BP-8 to DeVore, which DeVore reportedly denied in a written response (id.). Plaintiff submitted a formal grievance ("BP-9") to his housing unit counselor, D. Egeonuigwe, who alerted the Unit Manager, Mark Colangelo (id., p. 8). On May 3, 2011, Colangelo allegedly directed Plaintiff into a private area, told Plaintiff that he, Colangelo, agreed with DeVore, and asked Plaintiff to tear up the BP-9 (id.). When Plaintiff assertedly refused, Colangelo allegedly said he was going to assign Plaintiff to a job that would keep Plaintiff tied up all day because Plaintiff assertedly had too much

free time on his hands (id.).  Colangelo allegedly advised Egeonuigwe of this plan, and a few minutes later Egeonuigwe assertedly laughingly told Plaintiff that Plaintiff was being transferred to another job (id.).  Plaintiff allegedly was transferred to a job in the laundry, effective the next morning (id., pp. 8-9).  Plaintiff alleges that he is a 58-year-old man with chronic back and hip pain who assertedly cannot sit or stand without pain for short periods of time, and that in the laundry Plaintiff is forced "to sit for painfully long periods of time doing nothing" (id., p. 11).  Plaintiff alleges that the laundry did not need another worker, such that the only reason for the transfer assertedly was to punish Plaintiff for submitting a BP-9 challenging DeVore's policy interpretation (id., pp. 11-12).

Plaintiff also alleges that Colangelo interfered with the grievance process, assertedly by: (1) holding for seventeen days a notice from the BOP Regional Director advising Plaintiff to file a BP-9 instead of a BP-10; and (2) intercepting and holding for three months the BOP Central Office's response and threatening to transfer Plaintiff to a higher level prison after Plaintiff allegedly asked the warden for maximum halfway house time (id., pp. 9 n.2, 10).

Plaintiff alleges that, as a result of the asserted First Amendment violations by Colangelo, Egeonuigwe and DeVore, Plaintiff was forced to seek psychiatric treatment (id., p. 12).  Plaintiff allegedly fears now to use the prison administrative remedy process for fear of further retaliation (id.).  Plaintiff alleges that Colangelo, Egeonuigwe, DeVore and Spartz have conspired to deprive Plaintiff of his First Amendment rights (id., p. 13).

**DISCUSSION**

Plaintiff may not seek an order directing the United States Attorney to inform the grand jury of Plaintiff's allegations. "In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." Wayte v. United States, 470 U.S. 598, 607 (1985). "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973).

To the extent that Plaintiff alleges that prison officials interfered with or failed to respond to Plaintiff's grievances, the Complaint is insufficient. "[A]n inmate has no due process rights regarding the proper handling of grievances." Wise v. Washington State Dep't of Corrections, 244 Fed. App'x 106, 108 (9th Cir. 2007), cert. denied, 562 U.S. 1282 (2008); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004).

To the extent that Plaintiff purports to bring claims under federal penal statutes such as 18 U.S.C. section 242, no private right of action exists for violations of those criminal statutes. See Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006), cert. denied, 549 U.S. 1231 (2007); Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Finally, the Complaint does not name any Defendant, and it cannot be determined with certainty from the body of the document whom Plaintiff intends to sue. A complaint is subject to dismissal if "one

cannot determine from the complaint who is being sued, [and] for what relief . . ." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996); see also F. R. Civ. P. 10(a) (title of complaint "must name all the parties").

**CONCLUSION AND ORDER**

The Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Order within which to file a First Amended Complaint. The First Amended Complaint shall be complete in itself. It shall not refer in any manner to any prior complaint. Any First Amended Complaint must identify all Defendants whom Plaintiff wishes to sue in this action, and shall not seek the remedy of the prosecution of any other person. Failure to file timely a First Amended Complaint in conformity with this Order may result in the dismissal of this action. See Pagtalunan v. Galaza, 291 F.3d 639, 642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may dismiss action for failure to follow court order); Simon v. Value Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234 F.3d 428 (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001), overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 552 U.S. 985 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive problems with his claims); Plumeau v. School District #40, County of Yamhill, ///

1 | 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend
2 | appropriate where further amendment would be futile).[1]
3 |
4 |     IT IS SO ORDERED.
5 |
6 |         DATED: August 4, 2011.
7 |
8 |
9 | _____
10 |         JOHN A. KRONSTADT
    UNITED STATES DISTRICT JUDGE

14 | PRESENTED this 2nd day of
15 | August, 2011, by:
16 |
17 | _____/S/_____
    CHARLES F. EICK
18 | UNITED STATES MAGISTRATE JUDGE

---

[1] In view of this disposition, the Court need not and does not determine at this time whether Plaintiff can state a civil rights claim for retaliation.

8